IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | 4:15CR3091 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| SHARON A. ELDER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on two motions in limine filed by the government to preclude Sharon Elder and other defendants from raising affirmative defenses of public authority or entrapment by estoppel (Filing Nos. 102, 168) and on a motion in limine filed by Ms. Elder to preclude the government from introducing hearsay evidence (Filing No. 110). For the reasons discussed below, the government's motions will be granted and Ms. Elder's motion will be denied.

*Background*

The indictment, filed on August 19, 2015, charges Ms. Elder and co-defendants Jacie Sanne, Allen Peithman, AEP Properties LLC, and Cornerstone Plaza, Inc., with conspiracy to distribute Schedule I controlled substances between October 1, 2013, and April 23, 2015, plus related offenses (Filing No. 1). Ms. Sanne has entered a plea of guilty to one count of distributing a controlled substance (Filing Nos. 84, 92).

On May 18, 2016, Ms. Elder filed a "Notice of Public Authority Defense" which states:

> Defendant gives notice pursuant to Rule 12.3 of the Federal Rules of Criminal Procedure Rules she intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement

agency, namely, the Lincoln Police Department (LPD), Lincoln, Nebraska. Specifically, Defendant was contacted by telephone prior to and during the time presented in the indictment by a senior officer of LPD who said potpourri was legal in Lincoln and could be sold because the Legislature in session failed to act as expected to prohibit such substances and future derivatives. Further, a letter from Lincoln City Attorney Jeffrey Kirkpatrick to vendors of potpourri prior to, during or after the time present in the indictment said the definitive legal status of potpourri was unclear, uncertain and vague and vendors would not be prosecuted if it signed an agreement not to sale substances. Defendant signed the letter and conformed to its terms. Defendant believes and therefore alleges that such actions were pursued by and through then LPD Chief Peschong, Safety Superintendent T. Casady in cooperation with representative(s) of the United States Government or its agencies. As provided in Rule 12.3(e) of the Federal Rules of Criminal Procedure if this notice is later withdrawn the same is not admissible.

(Filing No. 87).

The government responded by filing a motion in limine on July 19, 2016, "to prohibit the Defendants from mentioning or presenting evidence regarding defenses of public authority and/or entrapment by estoppel ... for the reason that the Defendants cannot show by a preponderance of the evidence that either defense is applicable in this case" (Filing No. 102).[1] Evidence submitted by the government includes letters that City Attorney Kirkpatrick sent to Ms. Elder on April 28, 2015, together with agreements that were signed on June 6, 2015, by Ms. Elder, as the owner of businesses known as "Dirt Cheap" and "Island Smokes," and that were signed on June 11, 2015, by Mr. Kirkpatrick.

The content of the April 28, 2015 letters is identical:

---

[1] The government also objected in a supporting brief that the defendants' notice failed to comply with Rule 12.3(a)(2)(B) because it did not sufficiently identify "the agency member on whose behalf the defendant claims to have acted" (Filing No. 103).

Dear Ms. Elder:

Your business has been identified by the Lincoln Police Department as a retail establishment which currently or in the recent past has marketed a product known generically as K2. Employees of your business have previously been informed that K2 is being ingested by your customers despite the warnings on packaging. Due to the recent increase of medical emergencies caused by the smoking or ingestion of K2 products in Lincoln and other Nebraska communities, the Lincoln City Law Department considers the sale, distribution, and use of K2 products is a public nuisance and a health and safety threat.

I am writing to ask you to voluntarily sign a community protection agreement with the City of Lincoln. That agreement will be a commitment that you and your business will cease and desist from the practice of selling or distributing K2 products within Lincoln's city limits.

The City will be taking legal action in the very near future against businesses who refuse to voluntarily sign our community agreement. It is my goal to have community protection agreements signed with all of the Lincoln retail establishments that have marketed K2 by May 15, 2015.

Please call me at your convenience so that we can discuss whether you will be able to work with us in this effort.

Sincerely yours,

Jeffery R. Kirkpatrick
City Attorney

cc: Mayor Chris Beutler
Police Chief Jim Peschong

(Filing Nos. 104-1, 104-2).

In the "Synthetic Drug Community Protection Agreement," Dirt Cheap and Island Smokes each agree and acknowledge that:

- Synthetic drugs generally known as K2, Spice, or Bath Salts contain dangerous chemicals such as synthetic cannabinoids, cathinones, and psilocybin that are harmful to the residents of Lincoln.

- These drugs are often sold at the retail level as potpourri or incense under a variety of marketing names such as "Diablo", "Black Diamond", "Bizarro", "Orgazmo", "Rip It", and "No Mames."

- Despite often being labeled as "Not intended for human consumption," these drugs are being purchased by the public for the sole purpose of being smoked or otherwise ingested.

- Dirt Cheap [and Island Smokes each] will immediately cease selling the synthetic drugs referred to herein and will not in the future sell synthetic drug products regardless of the representations made by those who manufacture, distribute, and/or supply these drug products to Lincoln retailers.

- The synthetic drugs described herein may contain controlled substances as listed in Neb. Rev. Stat. §28-405 or as described in Neb. Rev. Stat §28-419. The possession and/or sale of these items may constitute a violation of Neb. Rev. Stat §28-416, Neb. Rev. Stat §28-420, or other applicable municipal, state, and federal laws.

- Dirt Cheap [and Island Smokes each] voluntarily relinquishes its entire inventory of synthetic drugs (if any) to the Lincoln Police Department and authorizes the destruction of these products (including any synthetic drug items currently held in evidence).

- By entering into this Agreement, the City is not making any promises or representations to said retailer, its owner, or employees regarding any possible criminal charges associated with said business and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities. The retailer, its owner, and its employees are not making any admissions about any past actions.

(Filing No. 104-3).

Also on July 19, 2016, Ms. Elder, referencing the Notice of Public Authority Defense, filed a motion to depose former Police Chief Peschong and attached copies of these same documents (Filing No. 105). The motion was denied by Magistrate Judge Cheryl R. Zwart on July 28, 2016. No appeal was taken.

On November 11, 2016, Ms. Elder renewed her notice of public authority defense and also provided notice that she intends to rely on the defense of entrapment by estoppel, stating:

> Defendant Elders [*sic*] through counsel renews her previous notice to the Government of her intention to rely on the Public Authority Defense (Filing No. 87) under Federal Rule 12.3. [FN1: If the Defendant acted as claimed in the indictment, she was authorized by the City to engage in conduct that was otherwise unlawful. Defendant's conduct was legitimized by government action. The letter agreement entered into by City Attorney Kirkpatrick and Defendant Elders [*sic*] and other vendors highlights the complex issue. Kirkpatrick was notified by Elders [*sic*] of violators of the spirit and intent of the agreement from in a timely manner.] Additionally, Defendant intends to reply upon the entrapment by estoppel defense. [FN2: If the Defendant acted as claimed in the indictment, the Government, the City of Lincoln, through Kirkpatrick, Reynolds and others (Rinehart/Rhinehart, and parking lot surveillance officers for instance) induced Elders [*sic*] to do acts and led her to rely reasonably on her belief that her actions would be lawful by the government's seeming authorization. Here, the task force for this present operation included federal, state and local authorities all acting in concert whether formally or informally, in writing or orally. The action of the City and the all government task force are binding on one another.] The law enforcement agency is the City of Lincoln via the City Attorney's Office and Lincoln Police Department. Witnesses that will advance the defenses for this Defendant include City Attorney Kirkpatrick, Lincoln Police Department Investigator Reynolds, and other governmental and non-governmental witnesses. The operative date of the public authority defense for purposes of the formal, written agreement though the City

> Attorney would be about April 28, 2015, and possibly earlier if agreed to in spirit subject to a later writing. For entrapment, it woud [*sic*] be earlier periods yet counsel's questions to LPD Reynolds on any topic before Elders [*sic*] arrest and search of her premises were deemed irrelevant by US Magistrate Judge Zwart during the surpression [*sic*] hearing.[2] The motion to depose LPD Chief Peschong was denied (filing no. 128) so particulars are scarce, undiscoveable [*sic*] and elusive.

(Filing No. 159). The government renewed its motion in limine on November 16, 2016 (Filing No. 168).

*Government's Motions in Limine*

"'Public authority' has been described as an affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity." *United States v. Achter*, 52 F.3d 753, 755 (8th Cir. 1995). "The public authority defense requires a defendant to show that he was engaged by a government official to participate in a covert activity." *United States v. Parker*, 267 F.3d 839, 843 (8th Cir. 2001).

---

[2] On July 20, 2016, Ms. Elder moved to suppress all evidence seized as a result of a search warrant executed on April 23, 2015, and all statements made by her during the search or following her arrest on that date. On August 12, 2016, Judge Zwart made certain findings of fact and recommended that the motion be denied with respect to the Fourth Amendment claims but ordered that a hearing be conducted on the Fifth Amendment claims (Filing No. 133). The findings and recommendation were not objected to and were adopted by me on September 7, 2016 (Filing No. 142). The hearing on the Fifth Amendment claims was held on September 26, 2016 (Filing No. 146 (text minute entry)). On October 31, 2016, Judge Zwart made findings of fact and recommended that the motion to suppress also be denied with respect to the Fifth Amendment claims (Filing No. 154).The findings and recommendation were not objected to and were adopted by me on November 28, 2016 (Filing No. 172).

"A defendant may assert a public authority affirmative defense when he has knowingly acted in violation of federal criminal law, but has done so in reasonable reliance on the authorization of a governmental official." *United States v. Alvarado,* 808 F.3d 474, 484 (11th Cir. 2015). "The public authority defense is narrowly defined, however, and a defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites. First, as the name of the defense implies, a federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue, and the defendant must have reasonably relied on that authorization when engaging in that conduct." *Id.* "Second, the government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question." *Id.*

Even if it might be assumed that Mr. Kirkpatrick or Investigator Reynolds had authority to permit Ms. Elder to violate federal laws, although it is clear they did not, *see Achter*, 52 F.3d at 755 (state or local officials lack the authority to bind the federal government to an erroneous interpretation of federal law), there is no evidence that they actually authorized Ms. Elder to commit the crimes for which she is now charged. Ms. Elder claims the letters she received from the City Attorney "said the definitive legal status of potpourri was unclear, uncertain and vague and vendors would not be prosecuted if it signed an agreement not to sale substances" (Filing No. 87), but the letters contain no such statements or representations, and the signed agreements expressly state that the City was not making any promises about possible criminal charges. Morever, the letters were not sent, and the agreement were not executed, until *after* Ms. Elder was arrested. Her suggestion that there may have been an agreement "in spirit" at an earlier date is unsubstantiated. The statement contained in the first-filed notice of public authority defense, that "Defendant was contacted by telephone prior to and during the time presented in the indictment by a senior officer of LPD who said potpourri was legal in Lincoln and could be sold because the Legislature in session failed to act as expected to prohibit such substances and future derivatives" (Filing No. 87), does not identify "the agency member on whose behalf

the defendant claims to have acted" as required by Rule 12.3(a)(2)(B), and does not indicate that the unidentified LPD officer opined about federal drug laws.

"Entrapment by estoppel arises when a government official tells a defendant that certain conduct is legal, and the defendant commits what otherwise would be a crime in reasonable reliance on the official representation." *Parker*, 267 F.3d at 844. "The defense of entrapment by estoppel only applies 'when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct.'" *United States v. Benning*, 248 F.3d 772, 775 (8th Cir. 2001) (quoting *Achter*, 52 F.3d at 755). "However, a government official must be guilty of affirmative misconduct in order for a defendant to put forth a viable defense of entrapment by estoppel." *Id.* (citing *United States v. Bazargan*, 992 F.2d 844, 849 (8th Cir. 1993); *United States v. LaChapelle*, 969 F.2d 632, 637 (8th Cir. 1992)); *see also United States v. Carlson*, 810 F.3d 544, 554 (8th Cir. 2016) (statement made by DEA spokesperson in newspaper article regarding analogue substances was not affirmatively misleading).

Ms. Elder argues that the April 28, 2015 correspondence was misleading because "[t]he City Attorney threatened prosecution under a 'nuisance' law'" and "knew the substances were not barred by ordinance and state law" (Filing No. 108 at CM/ECF p. 2), but, again, there is nothing in the letters or the signed agreements to indicate that the sale of K2 products would not violate federal law. In any event, Ms. Elder could not have reasonably relied upon these allegedly misleading statements because they were not made until *after* she was arrested.

On the evidence presented, no reasonable juror could find that Ms. Elder or any other defendant is entitled to the benefit of the affirmative defenses of public authority or entrapment by estoppel. The government's motion in limine therefore will be granted, and the defendants and their counsel during the trial of this matter shall not mention, present evidence, or question witnesses regarding these affirmative defenses without first obtaining permission of the court, outside the presence of the jury.

*Defendant's Motion in Limine*

On July 20, 2016, Ms. Elder filed a motion in limine "to bar the government from introducing inadmissible hearsay into evidence during the ... jury trial in this case. Specifically, Mrs. Elders [*sic*] seeks to bar hearsay statements of co-defendants Jaycee [*sic*] Sanne and Alan [*sic*] Peithman and Lincoln Police Department Investigator Daren Reynolds from being introduced into evidence at trial, as well as hearsay statements that were not made in furtherance of a conspiracy in which Mrs. Elders [*sic*] is alleged to have participated.... In the alternative, Mrs. Elders [*sic*] requests that the court exercise its discretion to hold a pretrial evidentiary hearing to determine (1) the statements that the government intends to introduce under Rule 80l(d)(2)(E); (2) the conspiracy that these statements are claimed to have furthered; (3) the connection of Mrs. Elders [*sic*] to any such conspiracies; and (4) the relevance of any such conspiracies to the issues in this case." (Filing No. [110](#)).

Ms. Elder has not described the alleged hearsay statements she seeks to preclude the government from introducing at trial, nor has she identified any facts which would justify deviating from the usual procedure for considering the admission of a co-conspirator's statement as prescribed by the Eight Circuit in *[United States v. Bell](#)*, [573 F.2d 1040, 1044 (8th Cir. 1978)](#):

> (1) If the prosecutor propounds a question which obviously requires a witness to recount an out-of-court declaration of an alleged coconspirator, the court, upon a timely and appropriate objection by the defendant, may conditionally admit the statement. At the same time, the court should, on the record, caution the parties (a) that the statement is being admitted subject to defendant's objection; (b) that the government will be required to prove by a preponderance of the independent evidence that the statement was made by a coconspirator during the course and in furtherance of the conspiracy; (c) that at the conclusion of all the evidence the court will make an explicit determination for the record regarding the admissibility of the statement; and (d) that if the court determines that the government has failed to carry the burden

delineated in (b) above, the court will, upon appropriate motion, declare a mistrial, unless a cautionary instruction to the jury to disregard the statement would suffice to cure any prejudice. *See United States v. Stanchich*, 550 F.2d 1294, 1298 (2d Cir.1977). The foregoing procedural steps should transpire out of the hearing of the jury. *See* Fed. R. Evid. 104(c).

(2) After a ruling on the record that the out-of-court declaration is admissible under Rule 801(d)(2)(E), the court may submit the case to the jury. The court should not charge the jury on the admissibility of the coconspirator's statement, but should, of course, instruct that the government is required to prove the ultimate guilt of the defendant beyond a reasonable doubt. An appropriate instruction on credibility should be given, and the jury should be cautioned with regard to the weight and credibility to be accorded a coconspirator's statement.

"In order for an out-of-court statement of a co-conspirator to be admissible, the government must show by a preponderance of the evidence '(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy.'" *United States v. Whitlow*, 815 F.3d 430, 434 (8th Cir. 2016) (quoting *Bell*, 573 F.2d at 1043). "[A]lthough courts may consider the contents of the statements, the government must produce independent evidence outside of the statements themselves to establish the existence of the conspiracy." *Id.* (quoting *United States v. Young*, 753 F.3d 757, 771 (8th Cir. 2014)). "The independent evidence needed to establish the existence of a conspiracy may be entirely circumstantial." *Id.*

Ms. Elder has not established that the government intends to present any inadmissible hearsay and has not demonstrated any necessity for a pretrial hearing to examine co-conspirator statements. Her motion in limine therefore will be denied in all respects.

Accordingly,

IT IS ORDERED:

1.  Plaintiff's motions in limine (Filing Nos. 102, 168) are granted. At no time during the trial of this matter shall the defendants or their counsel mention, present evidence, or question witnesses regarding the defenses of public authority or entrapment by estoppel without first obtaining permission of the court, outside the presence of the jury.

2.  Defendant's motion in limine (Filing No. 110) is denied in all respects.

DATED this 7th day of February, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge