IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:15CR3091 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| ALLEN E. PEITHMAN JR., SHARON A. | ) | **AND ORDER** |
| ELDER, CORNERSTONE PLAZA, INC., | ) | |
| and AEP PROPERTIES, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

There are two matters pending before me that are intertwined and mind-numbingly complex, yet require rapid resolution so that sentencing may proceed. I am reminded of William Shakespeare's advice. In his play, *Hamlet*, in the second act, Polonius (speaking for the Bard of Avon) asserts, "Since brevity is the soul of wit/And tediousness the limbs and outward flourishes, I will be brief . . . ."

### *What's This Fight About?*

Although set forth in 14[1] counts and over 30 pages in the indictment, this case boiled down to the alleged illegal sale of "potpourri" (sometimes called "K-2") and drug paraphernalia by a local "head shop" that generated a lot of money. After a long, and very well fought jury trial, a wise and discriminating jury found the defendants guilty of some counts but not guilty on other counts. In particular, the jury found that all of the defendants except AEP were guilty of Count 8, conspiracy to distribute drug paraphernalia, and Count 11, conspiracy to commit mail fraud by, among other things, acquiring for resale misbranded drugs (the "potpourri"). The jury found that all defendants were guilty of Count 12, conspiracy to structure currency transactions that followed the acquisition of the drug paraphernalia and potpourri.

---

[1] The indictment and jury instructions used Roman numerals. For this purpose, I eschew that formalism.

The government sought forfeiture of specific property. It set forth the statutory authorization for forfeiture at pages 29 and 30, paragraphs 1-3, in the indictment. I will not repeat or discuss those statutes because the defendants have not asserted that the government lacks a statutory basis for forfeiture.

Both parties demanded (or at least agreed) that the jury also determine whether the sought-after specific property should be forfeited. The jury agreed that packets of potpourri and related drug paraphernalia together with one bank account should be forfeited. The jury was unable to reach a unanimous agreement on some other specific items and found other specific items should not be forfeited. The items the jury did not forfeit or about which they could not reach agreement are the most valuable items of specific property.

The government also sought a money judgment as part of the forfeiture allegations for Count 8[2] and Count 11[3] and and Count 12.[4] But that matter, quite properly and as I will discuss later, was not submitted to the jury.

The government now asks me to enter a money judgment at the time of sentencing against the defendants. At the same time, the defendants seek a return of the property that the jury did not forfeit. The parties were heard, and evidence was received on April 24, 2017.

### *Money Judgment*

The term "money judgment" is "a short-hand way of describing the defendant's continuing obligation to forfeit the money derived from *or used to commit his criminal offense whether he*

---

[2] "A sum of money equal to the total amount of the proceeds of the violations of the Controlled Substances Act, as set out in Counts I through IX." (Filing no. 1 at CM/ECF p. 31.) Count 8, for which there was a conviction, charged a conspiracy to sell drug paraphernalia in violation of 21 U.S.C. § 863(a)(l) and 21 U.S.C. § 846.

[3] "A sum of money equal to the total amount involved in the mail fraud conspiracy as set out in Count XI." (Filing no. 1 at CM/ECF p. 32.)

[4] "A sum of money equal to the total amount involved in the structuring conspiracy offense, Count XII." *Id.*

*has retained the actual dollars in his possession or not.*" Stefan D. Cassella, *Asset Forfeiture Law in the United States - Second Edition*, at 579 (2013) (italics added) (hereafter "*Cassella*").[5] Indeed, "[t]he use of money judgments in criminal forfeiture cases is now well-established in the case law." *Id.* at 580.

More specifically, Federal Rule of Criminal Procedure 32.2 explicitly contemplates that the government may seek a money judgment. For example, see Rule 32.2(a), Rule 32.2(b)(1)(A), and Rule 32.2(b)(2)(A). If the government seeks a personal money judgment, "the *court* must determine the amount of money that the defendant will be ordered to pay." Rule 32.2(b)(1)(A) (italics added). The right to a jury determination is limited to "the forfeitability of *specific property*." Rule 32.2(b)(5)(A) (italics added).

By the greater weight of the evidence, I preliminarily decide that the government is entitled to a money judgment against all four defendants jointly and severally. I find by the greater weight of the evidence this judgment should be in the sum of $1,142,942.32. (*See* Hearing Exs. 68, 68A, 69, 69A (Apr. 24, 2017).) This represents the wholesale costs of acquiring the drug paraphernalia and potpourri, the sale of which generated the structuring conviction.

I have intentionally concentrated on activities that go to the core of the illegal activity *and* that facilitated everything that followed. Particularly to avoid double counting, I did not, at least directly, rely heavily on a "proceeds theory."[6]

Such an approach is consistent with the law:

> Money judgments . . . are *not* limited to property forfeited under a "proceeds" theory, if a sum of money was used to facilitate an offense, it may be forfeited in the form of a money judgment. *See United States v. Puche*, 350 F.3d 1137, 1153-54 (11th Cir. 2003) (affirming money judgment

---

[5] Although awkward to use online, this book is available through Google Scholar.

[6] However, because the purchases were repetitive, it is likely that the proceeds of sale from one acquisition were used to facilitate (fund) a subsequent acquisition.

> equal to the combined value of the commission paid to the money launderer and the untainted money used to facilitate the offense); *United States v. Numisgroup International Corp.*, 169 F. Supp. 2d 133, 136 (E.D.N.Y. 2001) (money judgment entered under § 982(a)(8) may be based on the value of the gross proceeds derived from the offense and the value of the property used to facilitate or promote it); *United States v. Harrison*, 2001 WL 803695, at *1-2 (N.D. Ill. 2001) (Government entitled to money judgment for the amount of money defendant used to facilitate his drug offense – i.e., the amount he used to purchase drugs.)

*Cassella*, at 588 & n.63 (italics added).

I next turn to the arguments of the parties. The government seeks $2,248,728.56.

However, if I granted the government's request, I fear that I would be double counting should I include those sums. Besides, by concentrating on the wholesale costs of the acquisition of the drug paraphernalia and the misbranded drugs, I have gotten to the core of the illegal activity. In this regard, I must not go overboard and thereby violate the Constitution. *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998) ("We now hold that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.") By concentrating on wholesale costs, the money judgment is proportional to the gravity of defendants' offenses since that is the amount of money they elected to spend to further their illegal goals. In any event, the government has not convinced me by the greater weight of the evidence that the money judgment it seeks is warranted by the evidence.

As for the defendants, they argue that I should not award a money judgment of any kind. They especially argue that the jury did not return a forfeiture verdict for a money judgment or the great bulk of the especially valuable specific items of property and, accordingly, I should not do so either. I am not persuaded.

I make two observations regarding defendants' arguments. First, no defendant sought a jury determination on the money judgment question. Even if they had done so, I would not have put the matter to the jury. This is so because (a) the law (particularly Rule 32.2) does not allow or provide for such a jury determination and (b) such a determination would practically be beyond the keen of the jury to do so.

Second, the fact that the jury did not forfeit valuable items of specific property is no reason to deny the government a money judgment. Indeed, the fact that the jury did not return a verdict of forfeiture for some items does not mean that those same items may not later be used to satisfy a forfeiture obligation otherwise imposed by the law. *Cassella*, at 579 & n.30 ("*See United States v. Weiss*, 2005 WL 1126663, at \*6-7 (M.D. Fla. May 6, 2005) (if jury fails to include an asset in the list of things directly traceable to the offense, the Government may seek forfeiture of the same asset as a substitute asset); *United States v. Henry*, 850 F. Supp. 681, 683 (M.D. Tenn. 1994), *aff'd*, 64 F.3d 664, 1995 WL 478635 (6th Cir. 1995) (Table) ("the jury verdict indicating that the Ewing Court residence should not be forfeited does not prevent the forfeiture of the property as a substitute asset . . . the very nature of a substitute asset requires that it is not property which is directly forfeitable")).

### *Return of Property*

The defendants seek a return of the specific items of property that the jury did not forfeit. The law permits me to return those items now, but to condition the use of the items in the hands of the defendants since those items would become subject to levy, execution, and the like upon the entry of the money judgment described above.

Federal Rule of Criminal Procedure 41(g) provides in pertinent part that:

> A person aggrieved . . . by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. *If it grants the motion*, *the court* must return the property to the movant, but *may impose reasonable conditions to protect access to the property and its use in later proceedings.* (Italics added.)

At this point, there can be no serious dispute that the defendants are "aggrieved" by the continued deprivation of the specific property which the jury "acquitted" or about which they were unable to reach a unanimous verdict. The government has raised no convincing argument to the contrary.

On the other hand, it is obvious, given the likelihood of a money judgment, that I should impose "reasonable conditions" upon the use of the returned property. The defendants have raised no convincing argument to the contrary.

At the evidentiary hearing, I informed the lawyers that I was inclined to allow the defendants to use the returned property for reasonable attorney fees and expenses for these proceedings and upon appeal, for reasonable support of Ms. Elder while she remains released, and for payment of Mr. Peithman's monthly child support obligations. With that so stated, the parties came to an oral agreement in chambers about how to effectuate the conditional return of such property. Counsel have now submitted to me via e-mail their agreed proposal. With changes that I decided were necessary, I generally adopt and include most of their proposal in the following order.[7]

IT IS ORDERED that:

1. The motions related to these matters appearing at filing no. 307, filing no. 322, filing no. 323, filing no. 326, filing no. 329, and filing no. 331 are denied except as provided below.

2. At the time of sentencing, a money judgment will be entered against the defendants, jointly and severally, and in favor of the United States for the total sum of $1,142,942.32. The undersigned reserves the right to alter or amend said sum prior to or at sentencing.

3. The defendants may challenge the money judgment set forth in paragraph 2, but only to the extent of attacking the factual accuracy of Exhibits 68, 68A, 69, and 69A received in evidence on April 24, 2017, or attacking the statutory basis for said judgment as more particularly described in this Memorandum and Order. Any such

---

[7] The government continues to object to any return of property. The defendants continue to object to the imposition of any conditions upon the returned property. Their agreement should not be construed as a waiver of these positions.

challenge shall be raised by motion and brief submitted no later than Thursday, June 1, 2017.[8]

4. The money judgment described in paragraph 2 above and this Memorandum and Order shall be construed as a preliminary order of forfeiture to the extent of the money judgement. The United States shall give such notice as required by law.

5. The government shall return the following property subject to the conditions hereinafter imposed:

A. The Food and Drug Administration is in possession of coins and silver seized from Peithman. It will transfer custody of these items to the U.S. Marshals Service ("Marshal") office in Omaha, Nebraska. The Marshal will maintain custody of them pending further order of the Court.

B. The following real properties are set forth in the Forfeiture Allegation of the Indictment:

Pecks Grove (Subdivision of Block 1), Lot A, South 60 feet, North 85 feet, East ½, Lincoln, Lancaster County, Nebraska, commonly known as 1075 N. 33rd Street, Lincoln, Lancaster County, Nebraska;

Lot Four (4), Elm Place, an addition to Lincoln, Lancaster County, Nebraska, commonly known as 2705 Randolph, Lincoln, Lancaster County, Nebraska;

Lots 5, 6 and 7, Elm Place, Lincoln, Lancaster County, Nebraska, except that portion of Lots 6 and 7 deeded to the City of Lincoln, Nebraska by virtue of Warranty Deed recorded June 13, 1978 as Inst. No. 78-15057 in the office of the Register of Deeds, Lancaster County Nebraska, commonly known as 810 South 27th Street, Lincoln, Lancaster County, Nebraska;

---

[8] The failure to file a motion and brief is not intended by me to constitute on appeal a waiver of the defendants' objection to the entry of a money judgment. In other words, they need to do nothing more insofar as I am concerned to preserve their objections to the money judgment.

Lot C, Bignell's Replat of Lots 4, 5, 6, 7, 8 and 9, Block 54 of First Addition to Norwood Park, Lincoln, Lancaster County, Nebraska, commonly known as 4524 N. 70th Street, Lincoln, Lancaster County, Nebraska;

Lot 1, Except the North 125 feet thereof, Block 4, Casino Heights, Lincoln, Lancaster County, Nebraska, commonly known as 119 S. 53rd Street, Lincoln, Lancaster County, Nebraska.

On August 25, 2015, the United States filed a lis pendens against each of the properties. Such lis pendens shall remain in place until further order of this Court. Peithman owns two other real properties. The United States may file a lis pendens on them.

C. The Marshal is in possession of $845.47 and $7,651.03, both sums seized from Wells Fargo bank accounts held in the name of Allen Peithman, Jr. The Marshal shall tender these sums to the trust account of Peithman's attorney of record, Korey L. Reiman.

D. The Marshal is in possession of $517.46 seized from a Union Bank & Trust account held in the name Sharon Elder. The Marshal shall tender this sum to the trust account of Elder's attorney of record, Robert B. Creager.

E. The Marshal is in possession of $176,040.00 seized from a safe in Allen Peithman's house. The Marshal shall tender this money to the trust account of Korey L. Reiman.

F. The Marshal is in possession of $85,000.00 found on top of a large safe. The Marshal shall tender this amount of money to the trust account of Robert B. Creager.

G. The Marshal is in possession of $1,146.00 seized from Island Smokes; the Marshal is also in possession of $330.00 seized from Dirt Cheap. The Marshal shall tender both of these amounts to the trust account of Robert B. Creager.

H. The Lincoln Police Department, as substitute custodian for the Marshal, is in possession of a 2006 Chevrolet Corvette, a 2012 Chevrolet Equinox LT, and a 2004 Mercedes Benz SL55AMG. The Marshal and the Lincoln Police Department shall tender possession of these vehicles to Sharon Elder, her representative, or her counsel, Robert B. Creager. The tender shall be at no cost to Elder, her representative, or her counsel. Titles to these vehicles are in the Court's possession as exhibits. The titles will not be tendered to Peithman, Elder, or their attorneys.

I. Mr. Reiman and Mr. Creager will accept these funds on behalf of their clients with the following understanding: Mr. Reiman and Mr. Creager may each spend up to $75,000.00 of the funds they receive from the Marshal for the expenses these attorneys represent they need to incur in order to proceed to sentencing and appeal, i.e., the services of a forensic accountant, the trial transcript, attorney's fees related to the sentencing hearings, and attorney's fees related to the appeals.[9] Additionally, the attorneys have represented Peithman has a child support obligation and Elder needs monthly living expenses. Accordingly, over and above the $75,000.00, Mr. Reiman may use $342.92 per month to pay Peithman's child support obligation. Mr. Reiman's authority to make such payment ends the day Peithman is sentenced. Mr. Creager may use $2,000.00 per month to pay Elder's living expenses. Mr. Creager's authority to make such payment ends the day Elder is sentenced.

J. Mr. Reiman and Mr. Creager accept these funds from the Marshal and on behalf of their respective clients with the understanding they and their clients, Peithman, Elder, and their corporate identities are ordered not to sell, transfer, assign, or take any action whatsoever which would encumber the remaining funds in their counsels' possession, the real estate upon which a lis pendens has been filed, and the vehicles returned to Elder. If required by the Court, Mr. Reiman and Mr. Creager shall provide an accounting.

---

[9] Richard L. Boucher, Elder's trial counsel who has withdrawn as counsel, claims that he is entitled to $1,725.15 for medical records obtained on behalf of Ms. Elder. Ms. Elder agrees. (Filing no. 342.) Mr. Creager shall distribute that sum to Mr. Boucher drawn from the $75,000 allocation.

K.  Mr. Reiman and Mr. Creager may petition the Court for authority to spend more funds on behalf of their respective clients.  The United States will be allowed to express its opinion as to whether any additional spending should be authorized.

DATED this 1st day of May, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge